UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICK AKOWUAH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SYNNEX CORP., KEVIN MURAI, DENNIS POLK, FRED BREIDENBACH, LAURIE SIMON HODRICK, HAU LEE, MATTHEW MAIU, DWIGHT STEFFENSEN, ANN VENZIA, THOMAS WURSTER, DUANE ZITZNER and ANDREA ZULBERTI,<br><br>　　　　　Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

　　　　Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

　　　　1.　　This action concerns a proposed transaction ("Proposed Transaction") announced on March 22, 2021, pursuant to which SYNNEX Corp., ("SYNNEX" or the "Company") will merge with Tiger Parent Corporation ("Tiger Parent"), the indirect parent of Tech Data Corporation ("Tech Data"), which is wholly owned by funds managed by affiliates of Apollo Global Management, Inc. ("Apollo Funds").

　　　　2.　　On March 22, 2021, SYNNEX's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Apollo Funds will receive 1.61 billion in cash and 44 million shares of SYNNEX common stock plus the refinancing of existing

Tech Data net debt and redeemable preferred shares of approximately $2.7 billion. (the "Merger Consideration").

3. Upon closing of the transaction, SYNNEX shareholders will own approximately 55% of the combined company, with Apollo Funds owning approximately 45%.

4. On May 3, 2021, in order to convince SYNNEX's Shareholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading Proxy Statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

5. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

6. In addition, a special meeting of SYNNEX's stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so SYNNEX's stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

**JURISDICTION & VENUE**

7. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible

under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.  Additionally, the Company's shares trade on the NASDAQ, which is headquartered in this District.

## THE PARTIES

10. Plaintiff is, and has been continuously throughout all times relevant hereto, a SYNNEX shareholder.

11. Defendant SYNNEX is a Delaware corporation and a party to the Merger Agreement.  SYNNEX shares are traded on the NYSE under the ticker symbol "SNX."

12. Defendant Kevin Murai is Chairman of the Board.

13. Defendant Dennis Polk is the Company's President, Chief Financial Officer, and a director of the Company.

14. Defendant Fred Breidenbach is a director of the Company.

15. Defendant Laurie Simon Hodrick is a director of the Company.

16. Defendant Hau Lee is a director of the Company.

17. Defendant Matthew Miau is director of the Company.

18. Defendant Dwight Steffensen is a director of the Company.

19. Defendant Ann Vezina is a director of the Company.

20. Defendant Thomas Wurster is a director of the Company.

21. Defendant Duane Zitzner is a director of the Company.

22. Defendant Andrea Zulberti is a director of the Company.

## FACTS

23. SYNNEX is a fortune 200 corporation specializing in IT distribution and providing comprehensive logistics, integration services, and technology solutions to help customers and business partners grow and enhance their customer-engagement strategies. SYNNEX operates in numerous countries throughout North and South America, Asia-Pacific, and Europe.

24. Tiger Parent, a Delaware corporation, is the indirect parent of Tech Data, a Florida corporation. Tech Data's end-to-end portfolio of products, services and solutions, highly specialized skills, and expertise in next-generation technologies enable channel partners to bring to market the products and solutions the world needs to connect, grow, and advance. Tech Data is ranked No. 90 on the Fortune 500 and has been named one of Fortune's World's Most Admired Companies for 11 straight years.

25. On March 22, 2021, SYNNEX's Board caused the Company to enter into the Merger Agreement.

> According to the press release announcing the Proposed Transaction:
>
> FREMONT, CA and CLEARWATER, FL, March 22, 2021 – SYNNEX Corporation (NYSE: SNX) and Tech Data today announced they have entered into a definitive merger agreement under which SYNNEX and Tech Data will combine in a transaction valued at approximately $7.2 billion, including net debt. The combined company, with approximately $57 billion in estimated pro forma annual revenues and a team of over 22,000 associates and colleagues, will provide customers and vendors with expansive reach across products, services, and geographies to accelerate technology adoption.
>
> "We are excited to partner with a world-class industry leader like Tech Data and believe that this combination will benefit all our stakeholders," said Dennis Polk, SYNNEX President and CEO. "This transaction allows for accelerated revenue and earnings growth, an expanded global footprint, and the ability to drive significant operating improvements while continuing to create shareholder value. We look

forward to working with the talented colleagues at Tech Data and expect our combined business will create the opportunity for team members to produce the highest levels of service to our partners."

"This is transformational for Tech Data, SYNNEX and the entire technology ecosystem. Together, we will be able to offer our customers and vendors exceptional reach, efficiency, and expertise, redefining the experience and value they receive," said Rich Hume, Tech Data CEO. "The combined company will also benefit from significant financial strength to invest in its core growth platform as well as next generation cybersecurity, cloud, data, and IoT technologies, which are experiencing explosive growth due to work from home and return to office trends. We could not have reached this milestone without the hard work of our colleagues, and we look forward to working together with the SYNNEX team to seamlessly bring our companies together and to create meaningful value for all our stakeholders."

***

Key Transaction Details

- Under the terms of the agreement, Apollo Funds will receive an aggregate of 44 million shares of SYNNEX common stock plus the refinancing of existing Tech Data net debt and redeemable preferred shares of approximately $2.7 billion.

- Upon closing of the transaction, SYNNEX shareholders will own approximately 55% of the combined entity, with Apollo Funds owning approximately 45%.

- Rich Hume will lead the combined company as CEO. Dennis Polk will be Executive Chair of the Board of Directors and will take an active role in the ongoing strategy and integration of the business, among other responsibilities.

- The combined company will have an eleven-member board, including Rich Hume, with six individuals appointed by SYNNEX and with Apollo Funds to have Board designation rights based on ownership, initially including four total directors, two of whom will be independent.

- Non-GAAP diluted EPS accretion of more than 25% is expected in year one post close, with further accretion expected in year two.

- Net optimization and synergy benefits of $100 million are expected in the first year after closing, achieving a minimum of $200 million by the end of the second year.

- The combined company will benefit from a strong financial foundation and

an investment grade profile. Based on LTM pro-forma adjusted EBITDA of approximately $1.5 billion and expected combined debt of approximately $4.0 billion at close, debt-to-adjusted EBITDA is expected to be approximately 2.7x at transaction close and is expected to decline to approximately 2x within 12 months.

The transaction is expected to close in the second half of calendar year 2021, subject to the satisfaction of customary closing conditions, including approval by SYNNEX stockholders and regulatory approvals. MiTAC Holdings Corporation and its affiliates, which collectively owned approximately 17% of SYNNEX shares as of January 22, 2021, have agreed to vote their shares in favor of the transaction. Until the transaction is completed, the companies will continue to operate independently.

\*\*\*

26. The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

27. It is therefore imperative that the Company's shareholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

28. Section 7.10 of the Merger Agreement has an "acquisition proposals" clause that prevents SYNNEX from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

**(a) Acquisition Proposals**

Each party agrees that it will not, and will cause each of its Subsidiaries and its and their respective directors and officers not to, and shall not permit its and their other respective Representatives to, directly or indirectly, (i) initiate, solicit, knowingly encourage or knowingly facilitate any inquiries or proposals with respect to any Acquisition Proposal, (ii) engage or participate in any negotiations with any person concerning any Acquisition Proposal, (iii) provide any confidential or nonpublic information or data to, or have or participate in any discussions with any person relating to any Acquisition Proposal or (iv) unless this Agreement has been terminated in accordance with its terms, approve or enter into any term sheet, letter of intent, commitment, memorandum of understanding, agreement in principle,

6

acquisition agreement, merger agreement or other agreement (whether written or oral, binding or nonbinding) (other than a confidentiality agreement referred to and entered into in accordance with this Section 7.10) in connection with or relating to any Acquisition Proposal. Each party will, and will cause its Representatives to, immediately cease and cause to be terminated any activities, discussions or negotiations conducted before the date of this Agreement with any person other than Parent or the Company, as applicable, with respect to any Acquisition Proposal, and request the return or destruction of any confidential information previously delivered to any such person pursuant to the terms of any confidentiality agreement to the extent provided by such agreement.

29. In addition, Section 9.2 of the Merger Agreement requires SYNNEX to pay up to $131,683,200.00 "termination fee" in the event this agreement is terminated by SYNNEX and improperly constrains the Company from obtaining a superior offer. Such a termination fee is excessive and unduly restrictive to SYNNEX's ability to consider other offers.

30. Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.

31. The Proxy omits material information concerning SYNNEX's and Tech Data's financial projections and some of the significant factors considered by the Board supporting its decision to approve the Merger.

32. With respect to SYNNEX's financial projections, the Proxy fails to disclose (i) all line items used to calculate non-GAPP net income and adjusted EBITDA; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

33. With respect to Tech Data's financial projections, the Proxy fails to disclose (i) all line items used to calculate adjusted EBITDA and adjusted free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

34. The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future

financial performance of the combined company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisors rendered in support of any fairness opinion.

35. Second, the Proxy omits material information regarding the analyses performed by the Company's financial advisor Duff Phelps, LLC ("Duff Phelps Advisors") in connection with the Proposed Transaction.

36. With respect to Duff Phelps Advisors' *Discounted Cash Flow Analyses* for Tech Data, the Proxy fails to disclose (1) unlevered free cash flows and all underlying line items; (2) the terminal/continuing value of the Company; (3) the individual inputs and assumptions underlying the (i) discount rate range of 10% to 11% (ii) terminal growth rates of 2.5%, (4) the alternative investment opportunities with similar risk profiles from which security holders could expect a similar rate of return.

37. With respect to Duff Phelps Advisors' *Selected Public Company Analyses* for Tech Data, the Proxy fails to disclose Duff Phelps's bases for selecting each of the companies observed.

38. With respect to Duff Phelps Advisors' *Public Companies / Selected M&A Transactions Analyses* for Tech Data, the Proxy fails to disclose the individual inputs and assumptions underlying the (i) LTM EBITDA multiple ranged of 9.0x to 10.0x; (ii) NTM EBITDA multiple ranged of 8.5x to 9.5x; and (iii) NTM + 1 EBITDA multiple ranged of 8.0x to 9.0x.

39. With respect to Duff Phelps Advisors' *Discounted Cash Flow Analyses* for SYNNEX, the individual inputs and assumptions underlying the (i) discount rate range of 10% to 11% and (ii) terminal growth rate of 2.5%

40. With respect to Duff Phelps Advisors' *Synergies Analyses* the Proxy fails to

disclose (1) the projected net Synergies for fiscal years January 2022 to January 2024; (2) the terminal/continuing value of net Synergies; the individual inputs and assumptions underlying terminal growth rate of 2.5%.

41. Third, the Proxy Statement fails to disclose the terms of the confidentiality agreements, including whether the agreements contained standstill and/or "don't ask, don't waive" provisions.

42. Fourth, the Proxy fails to disclose sufficient information regarding communications about post-transaction employment and directorship during the negotiation of the Proposed Transaction.

43. Fifth, the Proxy omits material information regarding the engagement of Duff Phelps including the amount of the customary fees, expense reimbursement, and indemnification Duff Phelps received from SYNNEX during the two years preceding the date of its Opinion and the amount of the hourly rates Duff Phelps will charge for any time incurred should Duff & Phelps becalled upon to support its findings subsequent to the delivery of its Opinion.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary

9

in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. Defendants issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

47. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

48. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy. Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

49. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

54. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act,

as well as Rule 14a-9 promulgated thereunder;

      E.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      F.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: May 27, 2021

              **MOORE KUEHN, PLLC**
              */s/Justin Kuehn*
              Justin A. Kuehn
              Fletcher W. Moore
              30 Wall Street, 8th floor
              New York, New York 10005
              Tel: (212) 709-8245
              jkuehn@moorekuehn.com
              fmoore@moorekuehn.com
              *Attorneys for Plaintiff*